IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DOMINGUEZ HURRY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 3:21-cv-673-ECM |
| ) | (WO) |
| GENERAL MOTORS LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is a motion for class certification (doc. 50) filed by the Plaintiffs on January 11, 2023, a motion for summary judgment (doc. 83) filed by the Defendant on May 17, 2023, and multiple motions to exclude expert opinions (docs. 74, 77, 81). The Plaintiffs originally filed a class action complaint for monetary relief on October 8, 2021. (Doc. 1). After rulings on a motion to dismiss, the case proceeded on three claims. Plaintiffs Dominguez Hurry ("Hurry") and Terry Wasdin ("Wasdin") moved to certify and represent a class pursuant to Federal Rule of Civil Procedure 23 on claims for breach of implied warranty,[1] fraudulent suppression,[2] and unjust enrichment under Alabama law. The Plaintiffs no longer seek class certification on the unjust enrichment

---

[1] The Court granted the Defendant's motion to dismiss Hurry's implied warranty claim. Thus, only Wasdin seeks class certification on this claim.

[2] As discussed at the motion to dismiss stage, "[t]he Court could not locate Alabama authority recognizing a claim for fraudulent omission distinct from a claim of fraudulent suppression or concealment." *Hurry v. Gen. Motors LLC*, 2022 WL 3587349, at *11 (M.D. Ala. Aug. 22, 2022). Thus, the Court will refer to the Plaintiffs' fraudulent omission claim as one for fraudulent suppression.

claims and have conceded that the Defendant's motion for summary judgment is due to be granted on those claims. (Doc. 65 at 20) ("Plaintiffs no longer seek certification of an unjust enrichment claim."); (doc. 91 at 29) ("Plaintiffs concede their individual unjust enrichment claims."). The motions are fully briefed, and the Court held Oral Argument on the motion for class certification on May 18, 2023. (Doc. 96). Upon consideration of the briefs, evidence, arguments presented at Oral Argument, and applicable law, and for the reasons that follow, the Defendant's motion for summary judgment (doc. 83) is due to be GRANTED, the Plaintiffs' motion for class certification (doc. 50) is due to be DENIED as MOOT, and the motions to exclude expert testimony (docs. 74, 77, 81) are due to be DENIED as MOOT.

## I. JURISDICTION

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## II. LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the part[ies] opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*,

891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving part[ies]," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving part[ies] ha[ve] failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden then shifts to the non-moving parties to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiffs and draws all reasonable inferences in their favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving part[ies]' and 'resolve all reasonable doubts about the facts in favor of the non-movant[s].' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

## III.  FACTS

A. <u>The Alleged Oil Consumption Defect</u>

This putative class action arises out of an alleged engine defect present in certain vehicles sold by the Defendant General Motors ("GM") in Alabama and nationwide (the "Class Vehicles"). The Plaintiffs define "Class Vehicle" to include the following model year 2011–2014 vehicles: Chevrolet Avalanche; Chevrolet Silverado; Chevrolet Suburban; Chevrolet Tahoe; GMC Sierra; GMC Yukon; and GMC Yukon XL. (Doc. 1 at 1–2, paras. 1–2). Class Vehicles are equipped with GM's Generation IV 5.3 Liter V8 Vortec 5300 LC9 Engines ("Generation IV Engines"). The Plaintiffs claim that the Generation IV Engines consume an abnormally high quantity of oil in excess of industry standards. Excessive oil consumption may result in low oil levels, insufficient lubricity levels, oil fouling, and internal engine damage. The Plaintiffs refer to this alleged defect as the "Oil Consumption Defect."[3]

The Plaintiffs claim that the primary cause of the Oil Consumption Defect is that the piston rings GM installed in the Generation IV Engines "wear and los[e] sealing capacity." (Doc. 91 at 8).  Although the piston rings in the Class Vehicles should ideally withstand over 100,000 miles of driving, the plaintiffs argue that for many drivers the piston rings deteriorate much sooner.  This deterioration requires drivers to replenish their oil supply frequently.

---

[3] Because the Plaintiffs refer to the alleged defect as the "Oil Consumption Defect," the Court will also do so in this opinion. In doing so, the Court does not necessarily adopt this characterization.

The Plaintiffs claim that GM knew about the Oil Consumption Defect as early as 2008. On June 8, 2009, before it sold the first Class Vehicle equipped with a Generation IV Engine, GM conducted a "Red X" investigation. This investigation focused on the excessive oil consumption seen in vehicles also equipped with Generation IV Engines that pre-dated the Class Vehicles. On January 8, 2010, the Red X team produced an Executive Report regarding Generation IV Engine excessive oil consumption, in which GM states: "Oil consumption clearly follows the piston/ring assembly." (Doc. 91-5 at 10).

After the Red X investigation, GM implemented two corrective modifications designed to reduce the oil consumption seen in the Generation IV Engines. In October 2010, it shielded the active fuel management ("AFM") valve to redirect oil spray. In February 2011, it implemented a new positive crankcase ventilation ("PCV") cover. GM argues that these modifications resolved the oil consumption issues seen in the Generation IV Engines. The Plaintiffs argue that these modifications were ineffective. They point to later internal GM communications as evidence that oil consumption issues persisted after these modifications.

In August 2010, GM issued the first of a series of Technical Service Bulletins ("TSBs")—notices directed towards dealers and their technicians—addressing excessive oil consumption in the 2007–2008 model years of the Class Vehicles. That TSB directed dealers faced with excessive oil consumption in a vehicle to conduct a piston cleaning process and install a new AFM shield as potential oil-consumption solutions. If these solutions were unsuccessful, the TSB directed the dealers to replace the pistons and rings. The Plaintiffs argue that these proposed remedies in this initial TSB, as well as

5

subsequently issued similar bulletins, were ineffective solutions proposed to conceal, rather than remedy, the Oil Consumption Defect.

On December 19, 2016, a putative nationwide class action was filed against GM in the United States District Court for the Northern District of California asserting claims arising out of the Oil Consumption Defect. *See Siqueiros et al. v. General Motors LLC*, 3:16-cv-7244-EMC (N.D. Cal.) ("*Siqueiros*"). The named Alabama plaintiff asserted a breached of implied warranty claim under Alabama law on behalf of the Alabama Class, which the complaint defined as "[a]ll current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of Alabama." (Doc. 2 at 25 in *Siqueiros*). "Class Vehicles" included the following vehicles: 2010–2013 Chevrolet Avalanche; 2010–2012 Chevrolet Colorado; 2010–2013 Chevrolet Express 1500; 2010–2013 Chevrolet Silverado 1500; 2010–2013 Chevrolet Suburban; 2010–2013 Chevrolet Tahoe; 2010–2013 GMC Canyon; 2010–2013 GMC Savana 1500; 2010–2013 GMC Sierra 1500; 2010–2013 GMC Yukon; and 2010–2013 GMC Yukon XL. (Doc. 2 at 2 in *Siqueiros*). On August 26, 2020, the named Alabama plaintiff's claims were voluntarily dismissed without prejudice from *Siqueiros*. (Doc. 271 in *Siqueiros*).

B. The Individual Plaintiffs

On April 17, 2017, Plaintiff Hurry purchased a used 2013 Chevrolet Silverado equipped with a Generation IV Engine from Jack Ingram Value Lot in Montgomery, Alabama, with approximately 53,160 miles on the odometer. Hurry first observed that his vehicle consumed excessive oil at around 54,000 miles on the vehicle's odometer. Hurry took his Silverado to Riverside Chevrolet in Wetumpka, Alabama, for an oil consumption

test. After performing the test, Riverside Chevrolet denied Hurry oil consumption repairs. Hurry has taken his Chevrolet to other body shops for various repairs, but the repairs have not remedied his vehicle's excessive oil consumption. Prior to purchasing his Silverado, Hurry spoke with a sales representative at the Jack Ingram Value Lot and saw commercials for the 2013 Chevrolet Silverado which promoted the truck's reliability and durability. GM did not disclose the Oil Consumption Defect to Hurry through these avenues or any others. If GM had disclosed the Oil Consumption Defect, Hurry would not have purchased the 2013 Silverado or would have paid less for it.

On February 11, 2013, Plaintiff Wasdin purchased a new 2012 Chevrolet Silverado equipped with a Generation IV Engine from Chuck Stevens Chevrolet in Bay Minette, Alabama, with approximately twenty miles on the odometer. Wasdin first noticed that his Silverado was consuming excessive amounts of oil at approximately 70,465 miles on the odometer when the check engine light came on. He then took the Silverado to Chuck Stevens Chevrolet, where he had valve covers and two spark plugs replaced. However, these replacements did not cure the oil consumption problem. At 93,547 miles on the odometer, Wasdin experienced misfiring and a knocking sound in his engine. He again took his Silverado to Chuck Stevens Chevrolet. According to the dealership, his Silverado had an oil-fouled plug and needed an engine replacement. Wasdin paid out of pocket for an engine replacement. Prior to purchasing his Silverado, Wasdin spoke with a sales representative at Chuck Stevens Chevrolet and reviewed the Monroney sticker on the vehicle. GM did not disclose the Oil Consumption Defect through these avenues or any

others. If GM had disclosed the Oil Consumption Defect, Wasdin would not have purchased the 2012 Silverado or would have paid less for it.

On January 27, 2022, GM filed a motion to dismiss the Plaintiffs' class action complaint. (Doc. 27). On August 22, 2022, the Court granted GM's motion in part as to the Plaintiffs' express warranty and Alabama Deceptive Trade Practices Act claims, as well as Plaintiff Hurry's implied warranty claim. (Doc. 34). On January 9, 2023, the Court dismissed Scott Goodwin, an original named plaintiff, on the joint stipulation of the parties. (Doc. 46).

## IV. DISCUSSION

GM sets forth a number of arguments against class certification and in favor of its motion for summary judgment on the Plaintiffs' individual claims. The Court finds the issues raised on summary judgment dispositive on all remaining motions. GM argues that it is entitled to summary judgment because the Plaintiffs' claims are time barred. GM also challenges whether the Plaintiffs have satisfied the essential elements of their fraudulent suppression claims or Wasdin's breach of implied warranty claim.

GM asserts that the Plaintiffs' claims are barred by the respective four-year and two-year statutes of limitations for breach of implied warranty of merchantability and fraudulent suppression. Wasdin purchased his class vehicle on February 11, 2013, whereas Hurry purchased his class vehicle on April 17, 2017. The Plaintiffs filed their complaint in this Court on October 8, 2021. The time elapsed between these purchase dates and the date the Plaintiffs filed this lawsuit exceeds the limitations period for all of their claims.

The Plaintiffs do not contest the span of the relevant statutes of limitations and concede that their claims are time barred without the benefit of tolling. *See* (doc. 96 at 20).

However, the Plaintiffs assert that they can avail themselves of the benefits of both fraudulent concealment tolling and class action tolling. Under fraudulent concealment tolling, they argue, the statutes of limitations for Wasdin's claims were tolled until the *Siqueiros* class action was filed in California federal court on December 19, 2016. The Plaintiffs argue that such tolling is available because GM committed an affirmative act of concealment by issuing TSBs that failed to disclose the oil consumption defect and instead directed dealers to a perform piston ring cleaning.

They further argue that they benefit from class action tolling from the start of the *Siqueiros* action on December 19, 2016 until August 26, 2020, when the named Alabama plaintiff in that action voluntarily dismissed the Alabama claims. At Oral Argument, the Plaintiffs admitted that they must rely on both tolling mechanisms for their claims to be timely. (*See* doc. 96 at 20). GM does not contest that, if these tolling mechanisms apply, the Plaintiffs' claims were timely filed.

The Plaintiffs argue that under *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny, their claims were tolled from December 19, 2016 to August 26, 2020 by virtue of the *Siqueiros* action. In *American Pipe*, the Supreme Court of the United States held that "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."

9

*Id.* at 552–53. The Court reasoned that, under such circumstances, imposing a time bar would not "promote the purposes of the statute of limitations." *Id.* at 555.

The Supreme Court later expanded such class action tolling to include class members that subsequently file independent actions. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors." (citation omitted)). The Court reasoned that denying tolling would cause "needless multiplicity of actions" because "[a] putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations." *Id.* at 350–51. The Court noted that "[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Id.* at 352.

Subsequently, the Alabama Supreme Court allowed a class action filed in state court to toll the limitations period for a later state court class action. *White v. Sims*, 470 So. 2d 1191, 1192 (1985). In that case, the Alabama Supreme Court held that "the commencement of a class action tolls the statute of limitations until such time as an independent action is filed, or until the denial of class certification, whichever may first occur." *Id.* at 1193. In reaching this holding, the court expressed approval of *Crown, Cork. Id.*

However, federal courts applying Alabama law have not interpreted *White* to authorize class action tolling in all cross-jurisdictional contexts. In *Bozeman v. Lucent Technologies, Inc.*, the plaintiffs argued that federal claims in an earlier class action should toll their state law claims in a subsequent class action. 2005 WL 2145911, at *2 (M.D. Ala.

10

Aug. 31, 2005). The *Bozeman* court acknowledged that *White* allows intra-state class action tolling when a subsequent class action is filed in state court. *Id.* at *3. However, the former class action in *Bozeman* was filed in federal court in another jurisdiction. *Id.* The *Bozeman* court declined to apply tolling, reasoning that the plaintiffs did not cite binding case law that would allow class action tolling in this cross-jurisdictional setting. *Id.* Further, other courts presented with the question "ha[d] been reluctant to expand the scope and availability of a state's equitable tolling powers." *Id.* Accordingly, this court found that the plaintiffs' claims were time barred. *Id.*

Similarly, in *Champion v. Homa*, this court articulated that *American Pipe* does not toll statutes of limitation in the cross-jurisdictional setting. 2008 WL 900967, at *11 (M.D. Ala. Mar. 31, 2008). Thus, "[t]he pendency of prior state court class actions arising out of the same factual situation does not toll the statute of limitations . . . for claims under federal law subsequently filed in federal court." *Id.* Accordingly, the court found that the federal claims were barred by the statute of limitations. *Id.*

Further, a court in the Northern District of Alabama noted that *White* "did not say that an Alabama plaintiff can rely upon the pendency of a putative class action filed in another state in which the 'would-be' class is national in scope" to toll the statute of limitations. *Love v. Wyeth*, 569 F. Supp. 2d 1228, 1235–36 (July 24, 2008). *Love* interpreted *Bozeman* to reject class action tolling "when the class action being relied upon for tolling was filed in another jurisdiction." *Id.* at 1237. Accordingly, *Love* declined to toll the statute of limitations for a class action filed in the Northern District of Alabama

11

when the earlier class action involved state law claims filed in a different federal court. *Id.* at 1235.

A federal court in South Carolina has used similar rationale to decline applying cross-jurisdictional class action tolling when applying Alabama law. In *Hopper v. Novartis Pharmaceuticals Corp.*, the court recognized that "no Alabama state court decision even addresses cross-jurisdictional class-action tolling," while "federal courts sitting in Alabama have predicted that the Alabama Supreme Court would not adopt" such tolling. 2013 WL 8147354, at *1 (D.S.C. Dec. 9, 2013). Accordingly, the court rejected cross-jurisdictional tolling in "the absence of a clear indication that the Alabama Supreme Court would embrace [it]." *Id.*

More recently, the United States Supreme Court narrowed the application of *American Pipe* and *Crown, Cork* by clarifying that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). The Court specified that "*American Pipe* and *Crown, Cork* addressed only putative class members who wish to sue individually after a class-certification denial." *Id.* at 1806. The Court reasoned that the rationale behind class-action tolling in *American Pipe* does "not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." *Id.* If *American Pipe* tolled the statute of limitations for follow-on class actions, it "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 1808.

The Plaintiffs properly point out that *White*, which applied Alabama law, allowed class action tolling in a follow-on class action. *China Agritech*, which did not allow class action tolling in such a scenario, did not apply Alabama law. However, *White* was decided more than thirty years prior to *China Agritech* and could not at that time adopt its rationale. However, *White* espoused the same principles from *American Pipe* and *Crown, Cork* that *China Agritech* later narrowed. Although *White* allowed class action tolling in the intra-state setting, it did not address the cross-jurisdictional setting that applies here.

Ultimately, this case differs from each of the cases that have addressed cross-jurisdictional class action tolling. Thus, this Court has no binding authority allowing it to apply class action tolling in this scenario.[4] Given this lack of clear guidance on the issue, this Court declines expand Alabama law in favor of tolling. To allow tolling in this situation would expanding Alabama law in a way that would allow the statute of limitations in a putative class action to be extended time and time again with each new filing of a putative class action. This Court is unpersuaded that Alabama would allow such an extension when presented with the facts at hand. Accordingly, the Court declines to apply class action tolling in this case and finds that the Plaintiffs' claims are barred by the relevant statutes of limitation. Thus, GM's motion for summary judgment is due to be GRANTED, and the remaining motions in this case are due to be DENIED as MOOT.

## V. CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

---

[4] Additionally, the Court finds that the Plaintiffs have failed to establish an affirmative concealment on GM's behalf that would allow them to take advantage of fraudulent concealment tolling.

1. The Defendant's motion for summary judgment (doc. 83) is GRANTED;

2. The Plaintiffs' motion to certify the class (doc. 50) is DENIED as MOOT;

3. The motions to exclude (docs. 74, 77, 81) are DENIED as MOOT.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 12th day of September, 2023.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE